**FILED**
CLERK, U.S. DISTRICT COURT
1/17/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VAV___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 2:23-cr-00017-DMG |
| Plaintiff, | **I N F O R M A T I O N** |
| v. | [18 U.S.C. § 666(a)(1)(A): Conversion and Intentional Misapplication of Funds from Organization Receiving Federal Funds; 26 U.S.C. § 7206(1): Subscription to a False Federal Tax Return] |
| HOWARD DIXON SLINGERLAND, aka "H. Dixon Slingerland," aka "Dixon Slingerland," | |
| Defendant. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 666(a)(1)(A)]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Youth Policy Institute, Inc. ("YPI") was a 501(c)(3) non-profit agency that worked to eradicate poverty in some of the highest needs neighborhoods in Los Angeles with a comprehensive approach addressing education, youth development, safety, job training, and health & wellness.

2. Defendant HOWARD DIXON SLINGERLAND, also known as ("aka") "H. Dixon Slingerland," aka "Dixon Slingerland," was a resident of Studio City, California.

3. Defendant SLINGERLAND was the president and chief executive officer of YPI and controlled YPI from approximately 1996 to 2019. Defendant SLINGERLAND was an authorized agent for YPI.

4. YPI's fiscal years each ended on June 30. YPI received more than $10,000 in federal funds in each of the 2009-2010, 2010-2011, 2011-2012, 2012-2013, 2013-2014, 2014-2015, 2015-2016, 2016-2017, 2017-2018 and 2018-2019 fiscal years to operate its charitable and educational programs.

5. To obtain the federal grants that provided the bulk of its funding, YPI certified that it would comply with all federal statutes, regulations and requirements imposed by the grant programs under which the funds were provided to YPI. Specifically, YPI certified that it would comply with the provisions set forth in Title 2 ("Grants and Agreements") of the Code of Federal Regulations ("CFR"). Part 200 Subpart E ("Cost Principles") of Title 2 sets forth allowable and unallowable uses of federal grant funds.

6. Defendant SLINGERLAND knew that, under the terms of the federal grants and applicable federal regulations, he was required to use the money that YPI received in accordance with the budgeted costs approved for each awarded grant and the requirements of each awarding agency, pursuant to Subtitle B ("Federal Agency Regulations for Grants and Agreements") of Title 2 of the CFR.

7. Defendant SLINGERLAND knew that, under the terms of the federal grants and applicable federal regulations, including Part 200 Subpart E of Title 2 of the CFR, YPI was prohibited from using the

grant funds for expenditures that did not accord with the budgeted costs approved for each awarded grant and the requirements of each awarding agency.

8. YPI maintained bank accounts at various banks throughout Los Angeles, California, including Wells Fargo Bank and Citibank. Defendant SLINGERLAND had check signing authority over YPI's bank accounts.

9. YPI provided defendant SLINGERLAND with an American Express credit card that defendant SLINGERLAND was authorized to use exclusively for YPI related business expenses. YPI paid the balances charged to this credit card using funds held in YPI's bank accounts.

10. Knowing that he was not entitled to use the federal grant money to pay for unauthorized expenses, including expenses incurred for his personal benefit, defendant SLINGERLAND would cause YPI to pay for improper and unauthorized expenditures, including expenditures that benefited defendant personally, through (a) the submission of expense reports claiming reimbursement for expenses and benefits that defendant SLINGERLAND knew were improper uses of YPI's funds, and (b) charges on the YPI Amex Card for expenses that defendant SLINGERLAND knew were improper uses of YPI's funds.

11. Between in or about January 2015, and February 2019, defendant SLINGERLAND caused approximately $71,533.56 of YPI funds to be spent on unauthorized expenditures, including expenditures that benefited defendant SLINGERLAND personally.

B.  CONVERSION OF FEDERAL FUNDS

12. On or about April 9, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant SLINGERLAND, an agent of YPI, knowingly and willfully embezzled,

3

obtained by fraud, intentionally misapplied, and without authority converted to the use of a person not the rightful owner, property valued at $5,000 or more that was owned by, and in the care, custody, and control of YPI, an organization that received federal program benefits in excess of $10,000 in each of the 2017-2018 and 2018-2019 fiscal years, namely $5,659.80 from YPI's account at Citibank ending in 6410 to pay for tutoring services for defendant SLINGERLAND's family member from Pallas Tutors.

COUNT TWO

[26 U.S.C. § 7206(1)]

13. The United States Attorney realleges paragraphs 1 through 11 of this Information here.

14. On or about October 16, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant SLINGERLAND, a resident of Studio City, California, willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2016, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which return defendant SLINGERLAND did not believe to be true as to every material matter, in that, on such Form 1040, defendant SLINGERLAND reported, on line 22, that he had total income in the amount of $650,649, when, as defendant SLINGERLAND then well knew and believed, his total income for that year was substantially higher than the amount he reported.

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section