FILED
CLERK, U.S. DISTRICT COURT
1/17/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: VAV DEPUTY

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
Assistant United States Attorney
Chief, Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2432
Facsimile: (213) 894-6269
E-mail: ranee.katzenstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

HOWARD DIXON SLINGERLAND,
aka "H. Dixon Slingerland,"
aka "Dixon Slingerland,"

Defendant.

No. CR 2:23-cr-00017-DMG

PLEA AGREEMENT FOR DEFENDANT HOWARD DIXON SLINGERLAND

1. Subject to the approval of the United States Department of Justice, Tax Division, this constitutes the plea agreement between HOWARD DIXON SLINGERLAND, also known as "H. Dixon Slingerland" and "Dixon Slingerland," ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of the conversion and intentional misapplication of federal funds awarded to Youth Policy Institute, Inc. ("YPI"), a 501(c)(3) non-profit agency that worked to eradicate poverty in some of the highest needs neighborhoods in Los Angeles, California, and

defendant's subscription to false federal tax returns for calendar years 2015 through 2018, inclusive. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with theft, embezzlement, and intentional misapplication of funds from an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A), and subscription to a false federal tax return, in violation of 26 U.S.C. § 7206(1).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Make restitution in accordance with the Court's order.

i. At or before the time of sentencing, make a prejudgment payment by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $200,000 to be applied to satisfy defendant's anticipated criminal debt. Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of guilty pleas, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k. Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

l. Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3. Defendant admits that defendant received at least $449,291 in unreported income for tax years 2015, 2016, 2017, and 2018 ($107,990, $121,988, $110,379, and $108,934 for tax years 2015, 2016, 2017, and 2018, respectively). Defendant agrees that:

a. Defendant will file, prior to the time of sentencing, amended returns for tax years 2015, 2016, 2017, and 2018, subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay to the Fiscal Clerk of the Court at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay to the Fiscal Clerk of the Court all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s). Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b. Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c. Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d. Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, under 26 U.S.C. § 6663, on the understatement of tax liability for tax years 2015, 2016, 2017, and 2018.

e. Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

THE USAO'S OBLIGATIONS

4. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d. Not further criminally prosecute defendant for violations of Title 18, United States Code, Sections 371, 1343, 1956, and 1957, and violations of Title 26, United States Code, Sections 7201 and 7206 arising out of defendant's conduct described in the agreed-to factual basis set forth in Exhibit B attached hereto. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that

at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

NATURE OF THE OFFENSES

5. Defendant understands that for defendant to be guilty of the crime charged in count one of the information, that is, theft, embezzlement, and intentional misapplication of funds from an organization receiving federal funds, in violation of Title 18, United States Code, Section 666(a)(1)(A), the following must be true:

*First*, defendant, at the time alleged in the information, was an agent of Youth Policy Institute, Inc. ("YPI");

*Second*, in a one-year period, YPI received federal benefits in excess of $10,000;

*Third*, defendant stole, embezzled, obtained by fraud, knowingly converted, or intentionally misapplied property;

*Fourth*, the property stolen, embezzled, obtained by fraud, knowingly converted, or intentionally misapplied was owned by, or in the care, custody, or control of, YPI; and

*Fifth*, the value of the property stolen, embezzled, obtained by fraud, knowingly converted, or intentionally misapplied was at least $5,000.

6. Defendant understands that for defendant to be guilty of the crime charged in count two of the information, that is, subscription to a false federal income tax return, in violation of Title 26, United States Code, Section 7206(1), the following must be true:

*First*, the defendant signed and filed a tax return for the year 2016 that he knew contained false information as to a material matter; a matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service. A false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.

*Second*, the return contained a written declaration that it was being signed subject to the penalties of perjury; and

*Third*, in filing the false tax return, the defendant acted willfully, that is, defendant, knowing that federal tax law imposed a duty on him, acted intentionally and voluntarily to violate that duty.

PENALTIES AND RESTITUTION

7. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 666(a)(1)(A), is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: 3 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; the costs of prosecution for defendant's tax offense; and a mandatory special assessment of $100.

9. Defendant understands, therefore, that the total maximum sentence for both offenses to which defendant is pleading guilty is: 13 years' imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; the costs of prosecution for defendant's tax offense, and a mandatory special assessment of $200.

10. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges. The parties currently believe that the applicable amount of restitution is approximately at least $821,958.56 ($674,560.56 for the violation of 18 U.S.C. § 666(a)(1)(A) and $147,398 for the violation of 26 U.S.C. § 7206(1)), but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11. Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately. The government is not

precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

12. Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the false subscription to a tax return count of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

13. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to felonies and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences,

including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of her convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts set forth in Exhibit B to this agreement, and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set

forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Count One: 18 U.S.C. § 666(a)(1)(A)

| | | |
|---|---|---|
| Base Offense Level | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Specific Offense Characteristics | | |
| Loss More than $550,000 Million, Less than $1.5 Million | +14 | [U.S.S.G. § 2B1.1(b)(1)(H)] |
| Offense Level | 20 | |

///

///

///

| Count Two: 26 U.S.C. § 7206(1) | | |
|---|---|---|
| Base Offense Level Tax Loss More than $100,000, Less than $250,000 | 16 | [U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(F)] |
| Grouping | +2 | [U.S.S.G. 3D1.4(a)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

22. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23. Defendant agrees that, provided the Court imposes a total term of imprisonment on both counts of conviction within or below the range corresponding to an offense level of 19 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the

sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $821,958.56; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a total term of imprisonment on all counts of conviction within or above the range corresponding to an offense level of 19 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $821,958.56.

WAIVER OF POST-CONVICTION COLLATERAL ATTACK

25. Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly

retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

RESULT OF WITHDRAWAL OF GUILTY PLEA

26. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then: (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL, OR SET ASIDE

27. Defendant agrees that if either count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on the remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding

sentencing contained in this agreement; (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on the remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement; or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

EFFECTIVE DATE OF AGREEMENT

28. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

29. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas; and (b) the USAO will be relieved of all its obligations under this agreement.

30. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge

that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed-to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

31. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

32. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court; (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence; and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

33. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

34. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

35. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

January 17, 2023

RANEE A. KATZENSTEIN
Assistant United States Attorney
Date

DECEMBER 21, 2022

HOWARD DIXON SLINGERLAND
Defendant
Date

December 22, 2022

VICKI I. PODBERESKY
Attorney for Defendant
HOWARD DIXON SLINGERLAND
Date

///

///

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

HOWARD DIXON SLINGERLAND
Defendant

DECEMBER 21, 2022
Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am HOWARD DIXON SLIGERLAND's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

VICKI I. PODBERESKY
Attorney for Defendant
HOWARD DIXON SLINGERLAND

December 22, 2022
Date

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD DIXON SLINGERLAND,<br>aka "H. Dixon Slingerland,"<br>aka "Dixon Slingerland,"<br><br>Defendant. | CR No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 666(a)(1)(A): Conversion and Intentional Misapplication of Funds from Organization Receiving Federal Funds; 26 U.S.C. § 7206(1): Subscription to a False Federal Tax Return] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 666(a)(1)(A)]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. Youth Policy Institute, Inc. ("YPI") was a 501(c)(3) non-profit agency that worked to eradicate poverty in some of the highest needs neighborhoods in Los Angeles with a comprehensive approach addressing education, youth development, safety, job training, and health & wellness.

2. Defendant HOWARD DIXON SLINGERLAND, also known as ("aka") "H. Dixon Slingerland," aka "Dixon Slingerland," was a resident of Studio City, California.

3. Defendant SLINGERLAND was the president and chief executive officer of YPI and controlled YPI from approximately 1996 to 2019. Defendant SLINGERLAND was an authorized agent for YPI.

4. YPI's fiscal years each ended on June 30. YPI received more than $10,000 in federal funds in each of the 2009-2010, 2010-2011, 2011-2012, 2012-2013, 2013-2014, 2014-2015, 2015-2016, 2016-2017, 2017-2018 and 2018-2019 fiscal years to operate its charitable and educational programs.

5. To obtain the federal grants that provided the bulk of its funding, YPI certified that it would comply with all federal statutes, regulations and requirements imposed by the grant programs under which the funds were provided to YPI. Specifically, YPI certified that it would comply with the provisions set forth in Title 2 ("Grants and Agreements") of the Code of Federal Regulations ("CFR"). Part 200 Subpart E ("Cost Principles") of Title 2 sets forth allowable and unallowable uses of federal grant funds.

6. Defendant SLINGERLAND knew that, under the terms of the federal grants and applicable federal regulations, he was required to use the money that YPI received in accordance with the budgeted costs approved for each awarded grant and the requirements of each awarding agency, pursuant to Subtitle B ("Federal Agency Regulations for Grants and Agreements") of Title 2 of the CFR.

7. Defendant SLINGERLAND knew that, under the terms of the federal grants and applicable federal regulations, including Part 200 Subpart E of Title 2 of the CFR, YPI was prohibited from using the

grant funds for expenditures that did not accord with the budgeted costs approved for each awarded grant and the requirements of each awarding agency.

8. YPI maintained bank accounts at various banks throughout Los Angeles, California, including Wells Fargo Bank and Citibank. Defendant SLINGERLAND had check signing authority over YPI's bank accounts.

9. YPI provided defendant SLINGERLAND with an American Express credit card that defendant SLINGERLAND was authorized to use exclusively for YPI related business expenses. YPI paid the balances charged to this credit card using funds held in YPI's bank accounts.

10. Knowing that he was not entitled to use the federal grant money to pay for unauthorized expenses, including expenses incurred for his personal benefit, defendant SLINGERLAND would cause YPI to pay for improper and unauthorized expenditures, including expenditures that benefited defendant personally, through (a) the submission of expense reports claiming reimbursement for expenses and benefits that defendant SLINGERLAND knew were improper uses of YPI's funds, and (b) charges on the YPI Amex Card for expenses that defendant SLINGERLAND knew were improper uses of YPI's funds.

11. Between in or about January 2015, and February 2019, defendant SLINGERLAND caused approximately $71,533.56 of YPI funds to be spent on unauthorized expenditures, including expenditures that benefited defendant SLINGERLAND personally.

B. CONVERSION OF FEDERAL FUNDS

12. On or about April 9, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant SLINGERLAND, an agent of YPI, knowingly and willfully embezzled,

obtained by fraud, intentionally misapplied, and without authority converted to the use of a person not the rightful owner, property valued at $5,000 or more that was owned by, and in the care, custody, and control of YPI, an organization that received federal program benefits in excess of $10,000 in each of the 2017-2018 and 2018-2019 fiscal years, namely $5,659.80 from YPI's account at Citibank ending in 6410 to pay for tutoring services for defendant SLINGERLAND's family member from Pallas Tutors.

COUNT TWO

[26 U.S.C. § 7206(1)]

13. The United States Attorney realleges paragraphs 1 through 11 of this Information here.

14. On or about October 16, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant SLINGERLAND, a resident of Studio City, California, willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2016, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which return defendant SLINGERLAND did not believe to be true as to every material matter, in that, on such Form 1040, defendant SLINGERLAND reported, on line 22, that he had total income in the amount of $650,649, when, as defendant SLINGERLAND then well knew and believed, his total income for that year was substantially higher than the amount he reported.

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

# EXHIBIT B

## STATEMENT OF FACTS

## IN SUPPORT OF PLEA AGREEMENT FOR

## HOWARD DIXON SLINGERLAND

Defendant HOWARD DIXON SLINGERLAND, also known as "H. Dixon Slingerland" and "Dixon Slingerland" ("defendant"), represents and admits that the following facts are true:

YOUTH POLICY INSTITUTE, INC., AND DEFENDANT

1. Youth Policy Institute, Inc. ("YPI") was a 501(c)(3) non-profit agency that worked to eradicate poverty in some of the highest needs neighborhoods in Los Angeles with a comprehensive approach addressing education, youth development, safety, job training, and health & wellness. YPI was founded in 1983 in Washington, D.C., with funds from the Robert F. Kennedy Memorial Fund. In 1996, YPI relocated to Los Angeles to focus on early childhood education, college preparation, financial empowerment, job training, and related issues. By June 2018, YPI's more than 900 employees served some of Los Angeles' lowest income neighborhoods, reaching more than 112,000 youth and adults annually at 122 program sites in the area.

2. Defendant, a resident of Studio City, California, was the president and chief executive officer of YPI and controlled YPI from approximately 1996 to 2019. Defendant was an authorized agent for YPI.

Read and Agreed to DS

3. YPI maintained bank accounts at various banks throughout Los Angeles, California, including Wells Fargo Bank and Citibank. Defendant had check signing authority over YPI's bank accounts.

4. Defendant obtained an American Express credit card account for YPI (the "YPI Amex Card"). Defendant personally guaranteed the YPI Amex Card, which - because YPI had no credit history - would not have been issued absent defendant's personal guarantee. Defendant remained the personal guarantor for the YPI American Express account throughout his time at YPI. Defendant was authorized to use the YPI Amex Card exclusively for YPI related business expenses. YPI paid the balances charged to the YPI Amex Card using YPI's funds held in YPI's bank accounts.

YPI'S FUNDING

5. YPI received more than $10,000 in federal funds in each of the 2009-2010, 2010-2011, 2011-2012, 2012-2013, 2013-2014, 2014-2015, 2015-2016, 2016-2017, 2017-2018 and 2018-2019 fiscal years to operate its charitable and educational programs.

6. As part of these federal funds, from July 2009 through June 2019, YPI received approximately $281,239,555 that was awarded to YPI by various federal agencies. On the Forms 990 Return of Organization Exempt from Income Tax ("Form 990") that YPI filed for the fiscal years ending in June 2010 through June 2018 (no Form 990 was filed for the fiscal year ending in June 2019), YPI declared that it received the following amounts of contributions and grants:



Read and Agreed to DS

| Fiscal Year ending | Form 990 Line 8: Total Contributions and Grants |
|---|---|
| 6/30/2010 | 21,680,216.00 |
| 6/30/2011 | 25,355,857.00 |
| 6/30/2012 | 22,406,003.00 |
| 6/30/2013 | 21,325,928.00 |
| 6/30/2014 | 27,226,263.00 |
| 6/30/2015 | 34,678,445.00 |
| 6/30/2016 | 40,288,776.00 |
| 6/30/2017 | 41,400,774.00 |
| 6/30/2018 | 46,877,293.00 |

7. Among the federal funds that YPI received in 2019, on or about June 26, 2019, YPI received a $1.5 million grant under the Workforce Innovation and Opportunity Act ("WIOA"), administered by the U.S. Department of Labor, for a project entitled Recovery Projects ("RP-3"). As described in the Statement of Work for which the grant was provided, RP-3 included LA Promise Reentry, which would target 188 young adults ages 18-24 with justice involvement in the Los Angeles area and provide them with education and training to prepare them for jobs in growing industries such as construction, customer service, food preparation and service, among others.

8. To obtain the federal grants that provided the bulk of its funding, YPI certified that it would comply with all federal statutes, regulations and requirements imposed by the grant programs under which the funds were provided to YPI. Specifically, YPI certified that it would comply with the provisions set forth in Title 2 ("Grants and Agreements") of the Code of Federal Regulations ("CFR"). Part 200 Subpart E ("Cost

Principles") of Title 2 sets forth allowable and unallowable uses of federal grant funds.

9. Defendant knew that, under the terms of the federal grants and applicable federal regulations, he was required to use the money that YPI received in accordance with the budgeted costs approved for each awarded grant and the requirements of each awarding agency, pursuant to Subtitle B ("Federal Agency Regulations for Grants and Agreements") of Title 2 of the CFR. Defendant knew that, under the terms of the federal grants and applicable federal regulations, including Part 200 Subpart E of Title 2 of the CFR, YPI was prohibited from using the grant funds for expenditures that did not accord with the budgeted costs approved for each awarded grant and the requirements of each awarding agency.

CONVERSION AND INTENTIONAL MISAPPLICATION OF FUNDS

10. Beginning by at least January 2015 and continuing through at least in or about February 2019, in Los Angeles County, and elsewhere, defendant, without authority, knowingly converted to the use of a person other than the rightful owner and intentionally misapplied funds valued at more than $5,000 from an organization that received federal benefits in excess of $10,000 in a one-year period, namely, YPI, in violation of Title 18, United States Code, Section 666(a)(1)(A).

11. Specifically, between in or about January 2015 and February 2019, defendant caused at least approximately $71,533.56 of YPI funds to be spent on unauthorized expenditures, including expenditures that benefited defendant



Read and Agreed to DS

personally. These unauthorized expenditures included but were not limited to approximately $14,703.26 on or about May 18, 2017, to pay the property tax on defendant's personal residence; approximately $6,131.40 to pay for a family dinner on November 21, 2017, at Momofuku Ko, a restaurant in New York City; approximately $10,805.51 on February 24 and April 26, 2018, to pay for tutoring for a family member; and approximately $1,979.00 to pay for a home computer and software in February 2019.

12. On or about July 3, 2019, defendant caused approximately $401,561 to be disbursed from funds YPI had received from the WIOA RP-3 grant to be used for unauthorized purposes, namely payment of YPI payroll.

13. On or about July 25, 2019, defendant caused approximately $201,466 to be disbursed from funds YPI had received from the WIOA RP-3 grant to be used for unauthorized purposes, namely payment of a YPI American Express bill which included the balance on YPI's Amex Card, including charges incurred by the defendant.

SUBSCRIBING TO FALSE TAX RETURNS

14. Defendant knowingly and willfully caused false tax returns to be signed and filed that did not report income that defendant had obtained from YPI. Specifically:

a. On or about October 14, 2016, defendant knowingly and willfully caused the signing and filing, under penalty of perjury, of a 2015 United States Individual Income Tax Return, Form 1040, which reported that his total income for the 2015 tax



Read and Agreed to DS

year was $640,726, when in fact, as defendant knew, his true income for tax year 2015 was substantially higher, namely, approximately $748,716, which included approximately $107,990 obtained from YPI, including approximately $8,890 defendant obtained through the scheme to convert and intentionally misapply money from YPI described above. On this unreported income, defendant had additional tax due and owing to the United States (exclusive of interest and penalties) of approximately $37,797.

b. On or about October 16, 2017, defendant knowingly and willfully caused the signing and filing, under penalty of perjury, of a 2016 United States Individual Income Tax Return, Form 1040, which reported that his total income for the 2016 tax year was $650,649, when in fact, as defendant knew, his true income for tax year 2016 was substantially higher, namely, approximately $772,637, which included approximately $121,988 obtained from YPI, including approximately $5,888 defendant obtained through the scheme to convert and intentionally misapply money from YPI described above. On this unreported income, defendant had additional tax due and owing to the United States (exclusive of interest and penalties) of approximately $42,696.

c. On or around October 8, 2018, defendant knowingly and willfully caused the signing and filing, under penalty of perjury, of a 2017 United States Individual Income Tax Return, Form 1040, which reported that his total income for the 2017 tax year was $691,738, when in fact, as defendant knew, his true



Read and Agreed to DS

income for tax year 2017 was substantially higher, namely, approximately $802,117, which included approximately $110,379 obtained from YPI, including approximately $23,779 defendant obtained through his scheme to convert and intentionally misapply money from YPI. On this unreported income, defendant had additional tax due and owing to the United States (exclusive of interest and penalties) of approximately $38,633.

d. On or around October 10, 2019, defendant knowingly and willfully caused the signing and filing, under penalty of perjury, of a 2018 United States Individual Income Tax Return, Form 1040, which reported that his total income for the 2018 tax year was $764,511, when in fact, as defendant knew, his true income for tax year 2018 was substantially higher, namely, approximately $873,445, which included approximately $108,934 obtained from YPI, including approximately $20,976 obtained through his scheme to convert and intentionally misapply money from YPI described above. On this unreported income, defendant had additional tax due and owing to the United States (exclusive of interest and penalties) of approximately $28,272.

***

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT in its entirety. I have had enough time to review this statement of facts and I have carefully and thoroughly discussed every part of it with my attorney. I agree that this



Read and Agreed to DS

statement of facts is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

HOWARD DIXON SLINGERLAND
Defendant

DECEMBER 21, 2022
Date

I am HOWARD DIXON SLINGERLAND's attorney. I have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support a plea of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 of the plea agreement.

VICKI I. PODBERESKY
Attorney for Defendant
HOWARD DIXON SLINGERLAND

December 22, 2022
Date



Read and Agreed to DS